UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | : | Case No. 1:18-cv-00796 |
| Plaintiff, | : | Judge Michael R. Barrett |
| v. | : | |
| DANIEL DESANTIS, | : | |
| Defendant. | : | |

**OPINION AND ORDER**

This matter is before the Court upon the Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction and Rule 12(b)(3) Motion to Dismiss for Improper Venue filed by Defendant Daniel DeSantis. (Doc. 3). Plaintiff Total Quality Logistics, LLC ("TQL") filed a Memorandum in Opposition (Doc. 4), and Defendant filed a Reply (Doc. 6). For the reasons set forth below, Defendant's Motion will be GRANTED.

**I.   BACKGROUND**

Plaintiff TQL is a limited liability company with its principal place of business located in Cincinnati, Clermont County, Ohio. (Doc. 2, ¶ 3 at PageID 42). It brings claims against Defendant DeSantis—a resident of Englewood, Colorado—for breach of contract, misappropriation of trade secrets, and tortious interference with a contractual relationship. (*Id.*, ¶ 4 at PageID 42, ¶¶ 48–68 at PageID 51–54; Doc. 1-2, ¶¶ 2, 5 at PageID 37). TQL filed its lawsuit in the Court of Common Pleas of Clermont County, Ohio on October 29, 2018. (Doc. 1-1 at PageID 6). On November 16, 2019, DeSantis removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1, at PageID 1–4).

According to the Complaint, Plaintiff TQL is a freight brokerage and third-party logistics provider with a nationwide customer base. (Doc. 2, ¶ 2 at PageID 41). Defendant DeSantis was previously employed by TQL in various capacities (*id.*), and executed an "Employee Non-Compete, Confidentiality and Non-Solicitation Agreement" ("Agreement") on August 19, 2013 as a condition of his employment (Doc. 2-1, Ex. A). The Agreement specified, *inter alia*, that he would not "engage in any Competing Business[] . . . for a period of one (1) year following termination or cessation of employment with TQL[,]" nor would he "solicit customers or divert business from TQL," or "employ, recruit, [or] solicit . . . any person who is, or within the previous twelve months has been, an employee of, consultant with, or been party to another business relationship with TQL." (Doc. 2, ¶¶ 21(d)–(f) at PageID 45–46) (hereinafter "non-competition and non-solicitation obligations").

Defendant DeSantis's employment with Plaintiff TQL terminated on February 10, 2017, and TQL alleges that DeSantis had "contracted with and/or was working for" a competing business by February 9, 2018, in violation of the Agreement. (*Id.*, ¶¶ 25, 28 at PageID 47). TQL further alleges that DeSantis breached the Agreement by "soliciting, recruiting and/or employing" Shelby Hyde, who had been in TQL's employ during the twelve-month period immediately prior. (*Id.*, ¶¶ 29–30 at PageID 47).

The Agreement specifies that it "shall be interpreted and enforced under the laws of the State of Ohio." (Doc. 2-1, ¶ 10 at PageID 61). And, relevant to the pending Motion, it further specifies that "any action, suit or proceeding with respect to or arising out of th[e] Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, Court of Common Pleas, Hamilton County, Ohio, <u>the United States District Court for the</u>

Southern District of Ohio, the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District of Illinois." (*Id.*) (emphasis added)).

Defendant DeSantis maintains that the forum selection clause is not enforceable. As such, he has not consented to personal jurisdiction in this Court. Regardless, and while not conceding outright that Ohio's long-arm statute applies to him, DeSantis nonetheless argues that he does not have the minimum contacts with Ohio that would satisfy the due process requirements of the United States Constitution. Plaintiff TQL counters that the forum selection clause is enforceable and, hence, DeSantis has consented to this Court's jurisdiction. Alternatively, TQL contends that Ohio's long-arm statute confers jurisdiction over Defendant DeSantis and that the exercise of jurisdiction comports with due process.

Defendant DeSantis argues additionally that venue is improper because he does not reside in the Southern District of Ohio and because TQL does not allege that a substantial part of the events giving rise to the claim occurred here. TQL responds that the forum selection clause alone suffices to find venue proper, and, in any event, underscores its recitation of DeSantis's intentional harmful conduct toward it (residing in the Southern District of Ohio) as well as the location of the majority of its witnesses (also in the Southern District of Ohio).

## II. ANALYSIS

### A. Standard of Review

#### 1. Rule 12(b)(2)—personal jurisdiction

"A federal court sitting in diversity may not exercise jurisdiction over a defendant unless courts of the forum state would be authorized to do so by state law—and any such

3

exercise of jurisdiction must be compatible with the due process requirements of the United States Constitution." *Int'l Techs. Consultants, Inc. v. Euroglas S.A.*, 107 F.3d 386, 391 (6th Cir. 1997) (citation omitted)). Personal jurisdiction, however, is a waivable defense, and may be done so through a forum selection clause. *Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 112 Ohio St. 3d 429, 2007-Ohio-257, 860 N.E.2d 741, 744 ¶ 6; *see Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 n.14 (1985); *see also Contech Const. Prods., Inc. v. Blumenstein,* No. 1:11cv878, 2012 WL 2871425, at *6 (S.D. Ohio July 12, 2012).

Federal Rule of Civil Procedure 12(b)(2) provides that a defendant may seek dismissal if the court lacks personal jurisdiction over that defendant. "The party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction exists." *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012) (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)). In the face of a supported motion to dismiss, the plaintiff may not rest on its pleadings, but must, by affidavit or otherwise, set forth specific evidence supporting jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citing *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 930 (6th Cir. 1974)). When a court considers a motion to dismiss pursuant to Rule 12(b)(2) without an evidentiary hearing, as the Court does here, it must consider the pleadings and affidavits in the light most favorable to the plaintiff. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1989). In such an instance, the plaintiff "'need only make a prima facie showing of jurisdiction.'" *Bird*, 289 F.3d at 871 (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). And the court may not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc. v.*

4

*Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459).[1]

## 2. Rule 12(b)(3)—improper venue

Federal Rule of Civil Procedure 12(b)(3) provides for dismissal based on improper venue. "However, a Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements. The requirements for venue are set by statute, as are the remedies available for improper and inconvenient venue." *Kerobo v. Sw. Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). Consistent with his challenge to personal jurisdiction, Defendant argues that venue is defective under 28 U.S.C. § 1406(a).

## B. Forum Selection Clause

As a general matter, a forum selection clause "is prima facie valid as long as the parties freely bargained for it." *Bohl v. Hauke*, 180 Ohio App. 3d 526, 2009-Ohio-150, 906 N.E.2d 450, 455 ¶ 13 (citing *Kennecorp Mortg. Brokers, Inc. v. Country Club Convalescent Hosp., Inc.*, 66 Ohio St. 3d 173, 175, 1993-Ohio-203, 610 N.E.2d 987, 989). In the absence of evidence of fraud or overreaching, a court should enforce the clause "unless it can be clearly shown that enforcement of the clause would be unreasonable and unjust." (*Id.*).

The Court recognizes that the contract in *Kennecorp* was between two commercial entities, whereas, here, the agreement is between employer and employee. And, in the employment context, "the presumption of validity in *Kennecorp* does not apply, and other

---

[1] "We adopted this rule . . . in order to prevent non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts[.]" *Theunissen*, 935 F.2d at 1459.

factors must be considered." *Buckeye Check Cashing of Ariz., Inc. v. Lang*, No. 2:06-cv-792, 2007 WL 641824, at *4 (S.D. Ohio Feb. 23, 2007) (citing *Deaconess Homecare, Inc. v. Waters*, No. C-990277, 1999 WL 1488974, at *1 (Ohio Ct. App. Dec. 8, 1999)). The clause will be enforced unless the party challenging it shows: (1) that the clause was the result of fraud or overreaching; (2) that enforcement would violate a strong public policy of Ohio; and (3) that enforcement under the particular circumstances of the case would be so unreasonable as to effectively deprive the challenging party of his day in court. *Id.* at *5 (citing *Barrett v. Picker Int'l, Inc.*, 68 Ohio App. 3d 820, 824, 589 N.E.2d 1372, 1374 (Ohio Ct. App. 1990)); *see Intrasee, Inc. v. Ludwig*, Nos. 10CA009916 & 11CA010024, 2012 WL 2236609, at *4 (Ohio Ct. App. June 8, 2012) (adopting *Buckeye*). In deciding whether a clause is reasonable and just, Ohio courts consider: (1) which law controls the contractual dispute; (2) what residency the parties maintain; (3) where the contract will be executed; (4) where the witnesses and parties to the litigation are located; and (5) whether the forum's designated location is inconvenient to the parties. *Buckeye*, 2007 WL 641824, at *7 (citing *Barrett*, 68 Ohio App. 3d at 825, 589 N.E.2d at 1374). Where the contract will be performed is also relevant to the third factor. *Barrett*, 68 Ohio App. 3d at 825, 589 N.E.2d at 1374.

Defendant DeSantis does not argue that the clause was the result of fraud,[2] but suggests there is evidence of overreaching. Overreaching exists when one party takes unfair commercial advantage of another. *Id.* at *5 (citation and quotation omitted). Unequal bargaining power by itself does not suffice, nor does the inability to negotiate

---

[2] "To invalidate a forum selection clause based on fraud, it must be established that the fraud relates directly to the negotiation or agreement as to the forum selection clause itself, not the contract in general." *Buckeye*, 2007 WL 641824, at *5 (citation omitted).

6

over the clause. *Id.* (citation omitted). But if the disparity in bargaining power was leveraged by the employer to take advantage of the employee, overreaching may be found. *Id.* (citation omitted). For example, in *Buckeye* the court was persuaded by the fact that the employee defendants "were not informed about or asked to sign the Agreement until after they had resigned their previous employment and started working for plaintiff." *Id.* at *7. Continuing,

> Defendants gave up other employment in reliance on plaintiff's offer of employment, but were not timely advised by plaintiff of all the terms of that employment. Plaintiff has offered no explanation as to why the defendants could not have been informed of the requirement of signing the Agreement at the time the offer of employment was made. While an employer may be entitled to the benefits of a forum selection clause even in cases involving unequal bargaining power, the plaintiff here took unfair advantage of defendants by waiting until they had already resigned their prior jobs and started working for plaintiff before informing them about the nonnegotiable Agreement which they were required to sign in order to keep their new employment.

*Id.* (citation omitted). DeSantis's declaration states that he resigned his previous employment and accepted employment with Plaintiff TQL "before I was required to accept a forum selection clause as a condition of employment." (Doc. 6-1, DeSantis Decl. ¶ 4 at PageID 125). TQL's declaration, given by its Risk Manager, states that "[p]rior to beginning employment with TQL, [Defendant DeSantis] had the opportunity to review the [Agreement] with TQL and was informed that he would be required to sign it as a condition of his employment." (Doc. 4-1, Bostwick Decl. ¶ 5 at PageID 96). As the Court understands these carefully crafted statements, DeSantis accepted—but did not begin— employment with TQL before being presented with the Agreement containing the forum selection clause. But, read together, DeSantis apparently did not know that he would be required to agree to an Ohio forum selection clause *during the recruitment process and*

7

*prior to resigning his previous employment* in anticipation of accepting TQL's offer of employment. While not precisely the circumstance described in *Buckeye*, this omission does indeed suggest overreaching.

As to the second factor, Defendant DeSantis does not argue, nor could he, that enforcement of the forum selection clause would violate the public policy of Ohio. This factor, then, weighs in favor of enforcement. *See Buckeye*, 2007 WL 641824, at *7.

The third factor is the subject of considerable debate between the parties. "An otherwise valid forum-selection clause cannot be enforced if it is 'unreasonable or unjust.'" *Info. Leasing Corp. v. Jaskot*, 151 Ohio App. 3d 546, 2003-Ohio-566, 784 N.E.2d 1192, 1196 ¶ 18 (Ohio Ct. App. 2003) (citing *Kennecorp*, 66 Ohio St. 3d at 173, 610 N.E.2d at 987, syl.). So, even without the suggestion of overreaching, the Court still must assess—through application of the additional five *Barrett* factors—whether enforcement will be reasonable and just.

The Agreement contains an Ohio choice of law provision, which favors enforcement. The other four factors, however, do not.

DeSantis was hired by TQL through Chicago-based recruiters and signed his employment contract in TQL's Chicago office. (Doc. 6-1, ¶¶ 2–3, 5 at PageID 125). He worked at TQL's Chicago office from August 19, 2013 through September 14, 2015, where he was supervised by a TQL employee who lived and worked full-time in Illinois. (*Id.*, ¶ 6 at PageID 125; Doc. 2, ¶ 14 at PageID 44). TQL then transferred DeSantis to its Denver, Colorado office, where he reported to a TQL employee who lived and worked full-time in Colorado, until DeSantis separated on February 10, 2017. (*Id.*, ¶ 7; Doc. 2, ¶ 15 at PageID 44). DeSantis remains a Colorado resident. (Doc. 2, ¶ 4 at PageID 42).

He is accused of working for TQL-competitor Logistics Dynamics, Inc. ("LDI") and recruiting former TQL employee Shelby Hyde to work with him there. (*Id.*, ¶¶ 2, 8–9, 47 at PageID 42, 43, 51). According to the Complaint, Defendant DeSantis flew to Buffalo, New York on February 8, 2018—two days before his non-competition and non-solicitation obligations would expire—and met with LDI. (Doc. 2, ¶¶ 26–27 at PageID 47). He began work for LDI the next day. (*Id.*, ¶ 28). Hyde took over DeSantis's accounts at TQL until her separation from TQL on September 14, 2017. (*Id.*, ¶¶ 38–39 at PageID 50). In the period before Hyde's non-competition and non-solicitation obligations expired,[3] DeSantis is alleged to have given her credentials to work for LDI under an "alias" email in an attempt to avoid detection by TQL. (*Id.*, ¶¶ 40–44).

TQL claims that the second, third, and fourth factors are "neutral." (Doc. 4, at PageID 84). The Court disagrees. Only TQL resides in Ohio; the challenging party—DeSantis—does not. Moreover, TQL does business nationwide, including, obviously, in Illinois and in Colorado. The challenging party—DeSantis—executed the Agreement in Illinois, where he was hired, and performed under it there until he was transferred by TQL to Colorado. That DeSantis may have "contacted customers and motor carriers nationwide" according to TQL's Bostwick does not undercut the fact that he initially performed under the Agreement in TQL's office located in Illinois and then later in TQL's office located in Colorado. Furthermore, the alleged breaches by DeSantis took place in Colorado. As for witnesses, representatives of LDI—implicated in all three claims for relief—are in New York and Shelby Hyde—at the center of TQL's third claim for relief—is

---

[3] Based on her separation date, Hyde's non-competition and non-solicitation obligations under the Agreement were not set to expire until September 14, 2018. (Doc. 2, ¶ 39 at PageID 50).

located in Colorado. None appear subject to subpoena in Ohio, and their voluntary appearance will be costly both in time and money.

TQL argues that DeSantis cannot claim inconvenience because, "[f]rom the outset of [his] employment relationship with TQL, DeSantis was on notice that he would be haled into Ohio courts for any dispute relating to this Agreement." (Doc. 4 at PageID 84). That statement, though, is not wholly accurate. The forum selection clause listed not only Ohio courts, but also Illinois ("the Circuit Court for Cook County, Illinois or the United States District Court for the Northern District of Illinois") courts, no doubt because TQL hired DeSantis to work in its Chicago office. Ohio was one of two possibilities.

"A finding of unreasonableness or injustice must be based on more than inconvenience to the party seeking to avoid the forum selection clause['s] requirement[]." *InVentiv Health Commc'ns, Inc. v. Rodden*, 108 N.E.3d 605, 612 ¶ 28 (Ohio Ct. App. 2018). While "mere distance, mere expense, or mere hardship" to DeSantis will not suffice, "manifest[ ] and grave[ ] inconvenien[ce]" will. *Id.* And manifest and grave inconvenience is measured by the additional five *Barrett* factors, the latter four of which indicate that the challenging party—DeSantis—will effectively be deprived of his day in court if the forum selection clause is enforced.

Whether or not the product of overreaching, the Court concludes that enforcement of the forum selection clause in this circumstance would be unreasonable and unjust. Therefore, the Court turns next to the personal jurisdiction analysis.

### C. Personal Jurisdiction

"Under Ohio law, personal jurisdiction over non-resident defendants is available only if (1) the long-arm statute confers jurisdiction and (2) jurisdiction is proper under the

Federal Due Process Clause." *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012) (citing *Kauffman Racing Equip., L.L.C. v. Roberts*, 126 Ohio St. 3d 81, 930 N.E.2d 784, 790 ¶ 28 (2010)); *Goldstein v. Christiansen*, 70 Ohio St. 3d 232, 235, 638 N.E.2d 541, 543 (1994)). Defendant DeSantis presents no arguments relating to Ohio's long-arm statute, noting only that it "is a particularized inquiry wholly separate from the analysis of the Due Process Clause." (Doc. 3 at PageID 74). Appearing not to contest personal jurisdiction under Ohio's long-arm statute,[4] DeSantis instead argues that he lacks the requisite minimum contacts. *See Conn*, 667 F.3d at 711–12 ("Of course, if jurisdiction is not proper under the Due Process Clause it is unnecessary to analyze jurisdiction under the state long-arm statute, and vice-versa."). The Court agrees.

The exercise of personal jurisdiction over DeSantis is consistent with due process if he "purposefully availed" himself of the privilege of acting, or causing a consequence, in Ohio; if the cause of action "arose from" his Ohio activities; and if his actions, or the consequences he caused, have a "sufficiently substantial connection" with Ohio so as to make the exercise of jurisdiction "reasonable." *Schmuckle*, 854 F.3d at 899 (citing *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 680 (6th Cir. 2012) (citing *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968))).

"The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Schneider v. Hardesty*, 669 F.3d 693, 701–02 (6th Cir. 2012) (quotation and citation omitted). To this end, at issue are

---

[4] "But even assuming the long-arm statute applies to DeSantis, TQL's action must nonetheless be dismissed because DeSantis does not have the minimum contacts with Ohio that are necessary under the Due Process Clause." (Doc. 3 at PageID 74).

11

DeSantis's contacts with Ohio, not his contacts with Ohio resident TQL. "[A]lthough 'a defendant's contacts with the forum State may be intertwined with his transactions or interactions with the plaintiff or other parties,' a relationship with the plaintiff or a third party, 'standing alone, in an insufficient basis for jurisdiction.'" *Id.* at 900 (quoting *Walden v. Fiore*, 571 U.S. 277, 286 (2014)). "If the question is whether an individual's contract with an out-of-state party *alone* can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer clearly is that it cannot." *Burger King*, 471 U.S. at 478 (emphasis in original). The focus instead is on "the defendant's contacts with the forum State itself." *Schmuckle*, 854 F.3d at 900 (quoting *Walden*, 571 U.S. at 285).

In the Court's view, DeSantis's sole contact with Ohio was being employed by an Ohio-based business. Nothing more. He was recruited by TQL in Illinois. He signed the Agreement that underpins this civil action in TQL's office in Illinois. He performed under that Agreement in Illinois for more than two years and then, once transferred to Denver by TQL, in Colorado until he separated. DeSantis is accused of violating his non-competition and non-solicitation obligations while in Colorado, where he prematurely began—and continues—to work for TQL competitor LDI and where he recruited Hyde, who, like him, was transferred to Colorado by TQL while in its employ.

The mere existence of a contract between a defendant and an Ohio resident is insufficient to establish purposeful availment, especially when, as here, the defendant does not perform under the contract in Ohio. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721–22 (6th Cir. 2000); *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 795 (6th Cir. 1996) (citing *Burger King*, 471 U.S. at 478). DeSantis's routine business

communications with TQL[5] likewise fail to establish purposeful availment, falling instead into the category of purely fortuitous and attenuated. *Calphalon*, 228 F.3d at 723 ("Rowlette's phone, mail, and fax contact with Calphalon in Ohio and [two] physical visits there occurred solely because Calphalon chose to be headquartered in Ohio, not because Rowlette sought to further its business and create 'continuous and substantial' consequences there.") (citation omitted); *see Wizie.com, LLC v. Borukhin*, No. 2:14-cv-10391, 2014 WL 2743375, at *5 (E.D. Mich. June 17, 2014) ("In addition to sending payment to Michigan, Defendant's only contacts with the forum are emails, faxes, and phone calls, which are exactly the type of fortuitous and attenuated contacts that make an exercise of personal jurisdiction over Defendant unreasonable in this case.").

TQL relies on two cases in support of purposeful availment. The first is readily distinguishable. In *Coast to Coast Health Care Servs., Inc. v. Myerhoffer*, the nonresident defendant negotiated her employment contract—over the telephone—with Ohio-based staff. No. 2:10-cv-734, 2012 WL 169963, at * 4 (S.D. Ohio Jan. 19, 2012). In contrast, DeSantis communicated with Illinois-based recruiters and signed his employment contract at Plaintiff TQL's office in Chicago. Moreover, the defendant in *Coast to Coast* reported to an Ohio-based manager whereas DeSantis reported to an Illinois-based manager when he worked in Chicago and a Colorado-based manager after he was transferred by TQL to Denver.

In the second, *TQL v. Cornelius Leasing Sys., Inc.*, another lawsuit filed by Plaintiff, the Court indeed found that a nonresident corporation "can fairly anticipate being haled

---

[5] As discussed by TQL with regard to whether DeSantis is subject to Ohio's long-arm statute, "[d]uring his employment, DeSantis electronically communicated with TQL personnel in Ohio, received documents from Ohio, received sales information from Ohio, and had the majority of his phone calls and emails routed through Ohio." (Doc. 4 at PageID 10).

13

before an Ohio court" to answer allegations of misappropriation of an Ohio corporation's trade secrets and confidential information. No. 1:17-cv-150, 2018 WL 1891354, at *5 (S.D. Ohio Mar. 13, 2018). Before Judge Black, however, were competing affidavits as to the defendant's Ohio contacts, which had to be viewed in the light most favorable to the plaintiff. *Id.* at *6. Yet the Court noted "that its preliminary determination of the jurisdiction question in the Order based on the parties' competing affidavits does not mean that [the defendant's] jurisdictional argument is waived. If discovery progresses in this case and the evidence demonstrates that [the defendant] in fact had no dealings with Ohio that would permit a finding of specific jurisdiction, [the defendant] may file a dispositive motion to again argue that there is no personal jurisdiction." *Id.* Here, the affidavits do *not* compete, and the Court returns to the premise that "mere injury to a forum resident is not a sufficient connection to the forum" to establish jurisdiction. *See Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018) (quoting *Walden*, 571 U.S. at 290).

The purposeful availment test has not been met, bringing this Court's analysis to an end. *See LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1303 (6th Cir. 1989) ("The plaintiff having failed to pass the 'purposeful availment' test, we need not dwell on the other criteria of *Mohasco Indus[.]*; each criterion represents an independent requirement, and failure to meet any one of the three means that personal jurisdiction may not be invoked.") The Court lacks personal jurisdiction over Defendant DeSantis, and dismissal is warranted.

### D. Venue

Defendant DeSantis additionally urges the Court to dismiss this civil action for improper venue. 28 U.S.C. § 1391(b) provides two possibilities for venue in this case: (1)

the district in which DeSantis resides, or (2) the district where a substantial part of the events giving rise to the claim occurred. DeSantis does not reside in the Southern District of Ohio, but, rather, in the District of Colorado. And, as previously discussed, a substantial part of the events giving rise to TQL's claims did not occur in the Southern District of Ohio, but, rather, in the District of Colorado, with the exception of one alleged breach in Buffalo, located in the Western District of New York. 28 U.S.C. § 1406(a) [6] is properly invoked "to dismiss or transfer if improper venue or lack of personal jurisdiction exists in the district court where the case is pending." *Sechel Holdings, Inc. v. Clapp*, No. 3:12-CV-00108-H, 2012 WL 3150087, at *2 (W.D. Ky. Aug. 2, 2012) (citing *Martin v. Stokes*, 623 F.2d 469, 474 (6th Cir. 1980)). As there has been no showing that transfer would be in the "interest of justice," this Court is likewise obliged under § 1406(a) to dismiss the Complaint.

### III. CONCLUSION

Based on the foregoing, Defendant Daniel DeSantis's Motion to Dismiss (Doc. 3) is hereby **GRANTED** and Plaintiff Total Quality Logistics, LLC's Complaint is **DISMISSED WITHOUT PREJUDICE**. *Accord Intera Corp. v. Henderson*, 428 F.3d 605, 620–21 (6th Cir. 2005).

**IT IS SO ORDERED**.

/s/ *Michael R. Barrett*
Michael R. Barrett, Judge
United States District Court

---

[6] "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).