UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| TOTAL QUALITY LOGISTICS, LLC, | Case No. 1:18-CV-796 |
| Plaintiff, | Judge Michael R. Barrett |
| v. | |
| DANIEL DESANTIS, | **OPINION & ORDER** |
| Defendant. | |

This matter is before the Court on the motion for reconsideration by Plaintiff Total Quality Logistics, LLC ("TQL"). (Doc. 12). Defendant Daniel DeSantis has filed a memorandum in opposition, (Doc. 13), to which TQL has replied, (Doc. 14). For the reasons set forth below, the Court will deny TQL's motion to reconsider the order of dismissal.

**I.     BACKGROUND**

  **a. Allegations Within the Complaint**

TQL is a limited liability company with its principal place of business Ohio. (Doc. 2, PageID 42). It brought claims against DeSantis—a resident of Colorado—for breach of contract, misappropriation of trade secrets, and tortious interference with a contractual relationship. (*Id.*, PageID 42, 51-54; Doc. 1-2, PageID 37). TQL filed its lawsuit in the Court of Common Pleas of Clermont County, Ohio on October 29, 2018. (Doc. 1-1,

PageID 6). On November 16, 2018, DeSantis removed the case to this Court based on diversity jurisdiction under 28 U.S.C. § 1332(a). (Doc. 1, PageID 1-4).

According to the Complaint, TQL is a freight brokerage and third-party logistics provider with a nationwide customer base. (Doc. 2, PageID 41). DeSantis was previously employed by TQL in various capacities, (*id.*), and executed an "Employee Non-Compete, Confidentiality and Non-Solicitation Agreement" ("Agreement") on August 19, 2013, as a condition of his employment, (Doc. 2-1, Ex. A). The Agreement specified, *inter alia*, that DeSantis would not "engage in any Competing Business[] . . . for a period of one (1) year following termination or cessation of employment with TQL[,]" nor would he "solicit customers or divert business from TQL," or "employ, recruit, [or] solicit . . . any person who is, or within the previous twelve months has been, an employee of, consultant with, or been party to another business relationship with TQL." (Doc. 2, PageID 45-46).

DeSantis's employment with TQL terminated on February 10, 2017, and TQL alleges that DeSantis had "contracted with and/or was working for" a competing business by February 9, 2018, in violation of the Agreement. (*Id.*, PageID 47). TQL further alleges that DeSantis breached the Agreement by "soliciting, recruiting and/or employing" Shelby Hyde, who had been in TQL's employ during the twelve-month period immediately prior. (*Id.*). The Agreement specifies that it "shall be interpreted and enforced under the laws of the State of Ohio," and, as relevant here, further provides that "any action, suit or proceeding with respect to or arising out of th[e] Agreement shall be brought in the Court of Common Pleas, Clermont County, Ohio, Court of Common Pleas, Hamilton County, Ohio, the United States District Court for the Southern District of Ohio, the Circuit Court

2

of Cook County, Illinois or the United States District Court for the Northern District of Illinois." (Doc. 2-1, PageID 61).

### b. Procedural Posture

Follow removal of the case to federal court, DeSantis filed his motion to dismiss for lack of personal jurisdiction and improper venue. (Doc. 3). In due course, TQL filed its memorandum in opposition, (Doc.4), to which DeSantis replied, (Doc. 6). The Court ultimately dismissed the matter without prejudice, concluding that (1) enforcement of the forum selection clause in the Agreement would be unreasonable and unjust; (2) there existed no personal jurisdiction over DeSantis; and (3) a transfer of venue would not be in the interest of justice. (Doc. 9).

TQL now moves for reconsideration, (Doc. 12), arguing primarily that the Court misinterpreted certain facts, impermissibly construed the pleadings and declarations in a light most favorable to DeSantis, and incorrectly limited the focus of its analysis.

## II.  LEGAL STANDARD

TQL has brought its motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e). "A court may grant a Rule 59(e) motion to alter or amend if there is: (1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005). However, a motion under Rule 59(e) is not an opportunity to relitigate a case. *Sault Ste. Marie Tribe of Chippewa Indians v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). Accordingly, where the movant fails to introduce new evidence, and instead relies solely on facts and arguments that were in the record at the time the court issued its decision, the motion for reconsideration is improper. *See Max*

*Rack, Inc. v. Core Health & Fitness, LLC*, No. 2:16-cv-01015, 2020 U.S. Dist. LEXIS 153063, at *9 (S.D. Ohio Aug. 24, 2020).

### III. ANALYSIS

#### a. Reconsideration

TQL asserts that it seeks reconsideration to correct "a clear error of law" and to "prevent manifest injustice." (Doc. 12, PageID 149). Because TQL's arguments constitute nothing more than mere disagreements with the Court's legal analysis, however, this matter is not appropriate for reconsideration. *Cf. Huff v. Metro. Life Ins. Co.*, 675 F.2d 119, 122 (6th Cir. 1982) (instructing courts to use "informed discretion" when deciding a Rule 59(e) motion).[1]

#### b. Personal Jurisdiction

A plaintiff bears the burden of establishing a court's personal jurisdiction over a defendant. *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002). If the defendant moves to dismiss for lack of personal jurisdiction, the plaintiff must set forth specific evidence supporting personal jurisdiction. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). If the court considers the motion to dismiss without an evidentiary hearing and relies solely on the parties' affidavits in reaching its decision (as was the case here), the plaintiff must make only a prima facie showing that personal jurisdiction exists in order to defeat dismissal. *See id.* at 1458-59. This Court must consider all pleadings and affidavits in the light most favorable to the plaintiff, without weighing contrary evidence, *Calphalon Corp. v. Rowlette,* 228 F.3d 718, 721 (6th Cir. 2000), and dismissal is warranted only if

---

[1] Nevertheless, for the sake of completeness, the Court will briefly review TQL's arguments.

4

all of the facts asserted by the plaintiff collectively fail to state a prima facie case for personal jurisdiction, *Theunissen*, 935 F.2d at 1459.

A plaintiff can show a court's personal jurisdiction over a defendant in different ways. First, personal jurisdiction can be waived as a defense through a valid forum selection clause. *Preferred Capital, Inc. v. Power Eng'g Grp., Inc.*, 860 N.E.2d 741, 744 (Ohio Ct. App. 2007). Second, notwithstanding any contractual waiver, an Ohio court may still exercise personal jurisdiction over a defendant if the Ohio long-arm statute confers jurisdiction and jurisdiction would be proper under the Due Process Clause of the Constitution. *Conn v. Zakharov*, 667 F.3d 705, 712 (6th Cir. 2012). Even recognizing, just as the Court did in its original order, that all pleadings and affidavits must be construed in favor of TQL, the Court finds no clear error in its decision.

### i. **Forum Selection Clause**

Forum selection clauses in employment agreements are enforceable unless the party opposing enforcement can show:

> (1) that the contract was the result of fraud or overreaching; (2) that enforcement would violate the strong public policy of the forum state; and (3) that enforcement under the particular circumstances of the case would result in litigation in a jurisdiction so unreasonable, difficult and inconvenient that the challenger would for all practical purposes be deprived of his day in court.

*Buckeye Check Cashing of Arizona, Inc. v. Lang*, No. 2:06-cv-792, 2007 U.S. Dist. LEXIS 12746, at *12 (S.D. Ohio Feb. 23, 2007) (citing *Barrett v. Picker Int'l, Inc.*, 589 N.E.2d 1372, 1374 (Ohio Ct. App. 1990)).

TQL argues that the Court's analysis of the forum selection clause was improper due to the fact that the Court acknowledged "evidence of overreaching." (Doc. 9, PageID

5

134). Overreaching does not result from every employment situation with an imbalance of bargaining power, but will be found more often if the employee was not informed of a forum selection clause until after the employee quit his or her previous job in reliance on the employer who drafted the forum selection clause. *Buckeye Check Cashing*, 2007 U.S. Dist. LEXIS 12746 at *13-14.

Although DeSantis did not make any argument for or mention of overreaching in his original motion to dismiss, TQL specifically raised the issue of overreaching in its memorandum in opposition. (Doc. 4, PageID 81). DeSantis then addressed this overreaching argument in his reply. (Doc. 6, PageID 117). The Court read the pleadings together as saying that DeSantis had the chance to review the Agreement before he started working at TQL and as a condition for working at TQL, but only after accepting their offer of employment and leaving his prior position. This was the evidence of overreaching that the Court utilized in making its decision to grant the motion to dismiss. (*See* Doc. 9, PageID 135).

TQL argues that the Court improperly construed the timeline of events in the light most favorable to DeSantis, apparently because TQL never expressly admitted that DeSantis had only been given the chance to review the Agreement after leaving his prior employment. (Doc. 12, PageID 151). However, both parties agree that DeSantis had the opportunity to review the Agreement at some point before commencing employment with TQL. Marc Bostwick's declaration for TQL does not outright contradict DeSantis's Affidavit that he only had the chance to examine the Agreement after he was out of a job and reliant on TQL for employment. Rather, the Bostwick declaration is silent on the matter,

6

meaning that the Court did not wrongfully weigh contrary evidence when it utilized DeSantis's reply to make sense of TQL's carefully crafted statements.

Critically, construing all facts in favor of the plaintiff does not necessarily mean adopting the plaintiff's legal conclusions. If this were the case, then almost every motion to reconsider would be granted if it stated any facts whatsoever.

TQL next argues that the Court erred in its analysis of whether the forum selection clause was unjust and unreasonable. (Doc. 12, PageID 152). On this point, Ohio courts consider "(1) which jurisdiction's laws control the contractual dispute; (2) the residency of the parties; (3) where the contract was executed; (4) the location of the witnesses and the parties to the litigation; and (5) whether the forum designated within the clause is inconvenient to the parties." *Buckeye Check Cashing*, 2007 U.S. Dist. LEXIS 153063 at *20. In the Court's order of dismissal, the Court held that the first of these factors weighed in favor of TQL, but the remainder weighed in favor of DeSantis, leading to a conclusion that enforcing the forum selection clause would be unjust and unreasonable. (Doc. 9, PageID 136).

TQL has asserted that, weighing the pleadings and affidavits in its favor, the Court's analysis of those four factors was erroneous. (Doc. 12, PageID 152). Regarding the residency of the parties and where the contract was executed, TQL argues that the Court "wholly omitted consideration of the fact that TQL resides in Ohio and executed the Agreement in Ohio." (Doc. 14, PageID 181). This is simply untrue, as reflected by the record. The Court did acknowledge that TQL resides in Ohio, and also noted that TQL does business nationwide. (Doc. 9, PageID 137).

7

This point would also go against TQL's next argument regarding the fourth unreasonableness factor—the location of the witnesses and the parties to the litigation. TQL alleges that "[s]ecuring the appearance of those [out-of-state] witnesses will be equally burdensome regardless of whether this lawsuit is brought in Ohio, Illinois, or Colorado." (Doc. 12, PageID 153). Not so. As the Court noted in its order, neither Hyde nor any of the key witnesses from LDI appear to be subject to subpoena in Ohio, and securing their voluntary appearance would be costly. (Doc. 9, PageID 138). As a plaintiff company doing business nationwide, TQL could secure voluntary appearances from its own employees (presumably, the primary Ohio-based witnesses to which TQL refers in its motion) with relative ease. (Doc. 12, PageID 153).

Finally, TQL failed to properly interpret the caselaw it cited regarding the last unreasonableness factor—inconvenience to the parties of litigating in the designated forum. It may be true that "mere distance, mere expense, or mere hardship" to an individual litigant is not sufficient to invalidate a forum selection clause, as the Ohio Court of Appeals noted in *Zilbert v. Proficio Mortg. Ventures, L.L.C.*, No. 100299, 2014 Ohio App. LEXIS 1803, at *12 (Ohio Ct. App. May 1, 2014). However, the *Zilbert* court found that the employer's chosen forum was not just inconvenient to "an individual litigant," but rather, was inconvenient to three out of the four litigants. *Id.* at *14-15. Moreover, that court also strongly considered the location of the witnesses and the evidentiary materials in determining proper jurisdiction, as this Court has also done. *Id.* at *15.

What TQL asks is for the Court to review previously known facts and reweigh those facts in its favor with no additional legal insights that might indicate a clear error. This essentially amounts to re-arguing the case, which is improper in a Rule 59(e) motion.

8

*Sault Ste. Marie Tribe of Chippewa Indians*, 146 F.3d at 374. Ultimately, there does not appear to be any clear legal error in the Court's determination that the forum selection clause is unenforceable and courts in Ohio would have no jurisdiction over DeSantis on those grounds.

### ii. Purposeful Availment

TQL further argues that, even if the Court's refusal to enforce the forum selection clause was proper, the Court would still have personal jurisdiction over DeSantis because he purposefully availed himself of the State of Ohio. Purposeful availment of the forum state is a key element in satisfying the Due Process Clause, which (along with a state's long-arm statute) is another way that a plaintiff can establish personal jurisdiction over a defendant. *Conn*, 667 F.3d at 712. A relationship with a plaintiff or third-party resident of the state, "standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014). So too is the presence of a contract between the defendant and a resident of the state, or fortuitous and attenuated business communications between the defendant and a resident of the state. *Calphalon Corp.*, 228 F.3d at 721–23.

TQL asserts that DeSantis purposefully availed himself of Ohio by working for an Ohio company, communicating with that Ohio company, and benefiting from his employment. (Doc. 12, PageID 154-55). It further argues that DeSantis knew that TQL, an Ohio company, would be harmed when DeSantis allegedly tortiously interfered with Hyde's contract with TQL, as well as when he allegedly breached his own contract. (*Id.*, PageID 155). But construing the pleadings and affidavits in the light most favorable to TQL, the Court did not make a clear error of law in determining that DeSantis did not purposefully avail himself of Ohio. Even taking as true TQL's allegations that DeSantis

9

engaged in tortious interference and breach of contract, injury to a forum resident does not in itself constitute enough of a connection to establish jurisdiction. *Bulso v. O'Shea*, 730 F. App'x 347, 350 (6th Cir. 2018). The case that TQL cites in its motion shows conduct far more damaging than what TQL alleged of DeSantis,[2] and the fortuitous and attenuated actions in this matter fall short of establishing purposeful availment.

### c. Venue

Venue is proper in either the district where DeSantis resides or the district where a substantial part of the events giving rise to the claim occurred. 28 U.S.C. § 1391(b). DeSantis resides in the District of Colorado, making that district a possible proper venue. TQL argues that the alleged economic losses they suffered, stemming from DeSantis's alleged tortious acts and breach, constitute a substantial part of the events giving rise to their claim. (Doc. 12, PageID 156). However, TQL is mistaking the effects of events giving rise to a claim for the events themselves. Nearly all of the actions ostensibly taken by DeSantis—the "events" in question—took place in the District of Colorado. Thus, no error lies in the Court's venue analysis.

### d. Manifest Injustice

The only other possible ground for granting reconsideration is to prevent manifest injustice. *Intera Corp.*, 428 F.3d at 620. TQL does not bring evidence of any manifest injustice, and there does not appear to be any in this situation. If courts in Ohio would be an improper forum for this case, TQL could simply bring the case in Illinois (a state not

---

[2] In *Am. Energy Corp. v. Am. Energy Partners*, No. 2:13-cv-886, 2014 U.S. Dist. LEXIS 64524 (S.D. Ohio May 9, 2014), the defendant company allegedly used a trade name nearly identical to the plaintiff company's, and then began directly competing with the plaintiff company over the development and sale of energy resources in Ohio. A company deliberately entering into a market and confusing a state's consumers is much more harmful to the forum state than a single employee getting a job at an Ohio-based company, never living in Ohio, and improperly breaching his restrictive covenant far away from Ohio.

only selected by TQL in its forum selection clause, but in which it employed DeSantis), (*see* Doc. 2), or in Colorado (where DeSantis and Hyde, a key witness, live), (*see* Doc. 3). Therefore, because there is no evidence of a need to prevent manifest injustice, reconsideration is improper on these grounds.

## IV. CONCLUSION

Based on the foregoing, TQL's motion for reconsideration, (Doc. 12), is hereby **DENIED**.

**IT IS SO ORDERED.**

                                                  /s/ Michael R. Barrett
                                                  Michael R. Barrett, Judge
                                                  United States District Court